IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ISAIAH J. KENNEDY, | § § § | |
| *Plaintiff,* | § § | SA-23-CV-00470-FB |
| vs. | § § § | |
| EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, NAVY FEDERAL CREDIT UNION, CREDENCE RESOURCE MANAGEMENT, DEPARTMENT OF EDUCATION, CREDIT FIRST NATIONAL ASSOCIATION, T MOBILE, AT&T, AMSHER COLLECTION SERVICES, SANTANDER CONSUMER USA, | § § § § § § § § § § § § § | |
| *Defendants.* | § | |

**ORDER**

Before the Court in the above-styled cause of action are the following two motions seeking orders compelling the arbitration of Plaintiff's claims: Defendant Santander Consumer USA, Inc.'s Motion to Compel Arbitration [#31] and Defendant T-Mobile Corporation's Motion to Dismiss for Improper Venue and Lack of Subject Matter Jurisdiction [#53].[1] The undersigned has authority to enter this non-dispositive order pursuant to 28 U.S.C. § 636(b)(1)(A). In evaluating the merits of Defendants' motions, the Court has also considered the following responses and replies [#74, #75, #78, #79]. For the reasons that follow, the Court will grant the motions in part, compel Plaintiff to arbitrate his claims with Defendants Santander Consumer

---

[1] T-Mobile's motion is characterized as a motion to dismiss for improper venue and lack of subject matter jurisdiction, though the motion substantively seeks dismissal based on a valid and enforceable arbitration provision. The Court therefore construes this motion as a motion to compel arbitration.

1

USA, Inc., and T-Mobile Corporation, and stay Plaintiff's claims against these Defendants pending the outcome of the arbitration.

## I.  Background

Plaintiff Isaiah J. Kennedy, proceeding *pro se*, filed this action against numerous Defendants, asserting claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*; Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*; and Texas Debt Collection Act, Tex. Fin. Code § 392, *et seq.*, and seeking relief for alleged false reporting of his credit information. Plaintiff's live pleading is a First Amended Complaint [#28], which names the following Defendants: Equifax Information Services LLC; Experian Information Solutions, Inc.; Trans Union, LLC; Navy Federal Credit Union; Credence Resource Management; Department of Education; Credit First National Association; T-Mobile; AT&T; Amsher Collection Services; and Santander Consumer USA.  Plaintiff contends that his credit reports contain numerous pieces of false information, including debts that are not his own, residential addresses at which he never lived, and names of employers for whom he never worked.  Plaintiff claims he has attempted to dispute the debt, to no avail, and he has been financially harmed by the fraudulent information on his credit report by being repeatedly denied credit.

Defendant Santander Consumer USA, Inc., ("Santander") and Defendant T-Mobile Corporation ("T-Mobile") have each filed motions to compel arbitration.  Both of these Defendant argue that the contracts they executed with Plaintiff contain a valid and enforceable arbitration provision, requiring Plaintiff to arbitrate his disputes and preventing him from seeking remedies in this judicial forum.  The motions are ripe for review.

## II.  Legal Standard

The Fifth Circuit has established a two-step inquiry in determining whether the parties have agreed to arbitrate a claim.  "The first is contract formation—whether the parties entered into *any arbitration agreement at all*.  The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original).  Ordinarily, both steps are questions for the Court.  *Id.*  However, where the parties' contract delegates the question of arbitrability to the arbitrator, a court possesses no authority to decide whether the parties' dispute falls within the scope of the agreement.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S.---, 139 S. Ct. 524, 529 (2019).

Although there is a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *TRC Env't Corp. v. LVI Facility Servs., Inc.*, 612 Fed. App'x 759, 762 (5th Cir. 2015).  Hence, the party moving to compel arbitration bears the initial burden of proving the existence of an agreement to arbitrate that meets "all of the requisite contract elements."  *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018).  Once the moving party has met its initial burden, the burden shifts to the party resisting arbitration to assert a reason that the arbitration agreement is unenforceable.  *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

The Federal Arbitration Act ("FAA") applies to written arbitration agreements in contracts "evidencing a transaction involving commerce."  *See* 9 U.S.C. § 2.  Federal policy strongly favors arbitration. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 224 (1987).  "Section 2 of the FAA provides that written arbitration agreements 'shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686 (1996) (quoting 9 U.S.C. § 2). "[A]s a matter of federal law, arbitration agreements and clauses are to be enforced *unless* they are invalid under principles of state law that govern all contracts." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004) (emphasis in original) (interpreting Section 2). Thus, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Casarotto*, 517 U.S. at 687.

### III.  Analysis

The Court will grant Defendants' motions to compel arbitration because both Santander and T-Mobile have satisfied their burden to establish the existence of a valid agreement to arbitrate with Plaintiff, and Plaintiff has not established that the contract is invalid or unenforceable under principles of state law.

Plaintiff's claims against these two Defendants focus on the alleged failure to conduct an adequate investigation into the accuracy of information provided to various credit reporting agencies in violation of the Fair Credit Reporting Act. (First Am. Compl. [#28], at ¶¶ 79–92.) Plaintiff alleges that the debt Santander and T-Mobile reported did not belong to him and resulted from identity theft. (*Id.*) Both Santander and T-Mobile argue that Plaintiff agreed to submit these claims to an arbitrator and have presented the Court with arbitration agreements executed with Plaintiff in conjunction with consumer transactions.

Santander's arbitration agreement with Plaintiff is contained in a Retail Installment Contract executed in connection with the purchase and financing of a 2017 Jaguar XE from CarMax Auto Superstores, Inc., and assigned to Santander. (Van Haren Decl. [#31-1], at ¶ 6;

Contract [#31-1], at 7–8.)  This "Arbitration Provision" provides that by signing the Contract, Plaintiff and CarMax (as well as its subsidiaries, affiliates, agents, employees and officers, or anyone to whom CarMax transfers its right under the Contract) are bound to the terms of the Arbitration Provision.  (Contract [#31-1], at 7.)  Per the terms of the Arbitration Provision, if a party to the contract chooses arbitration, arbitration is mandatory, and "any claim" will be decided by arbitration.  (*Id.*)  The Contract defines "claim" as "any claim, dispute or controversy . . . that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, the Vehicle and related goods and services that are the subject of the purchase and this Contract, or the collection or servicing of this Contract . . . ."  (*Id.*)  These claims specifically include "[d]isputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief)"; "[d]isputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions;" and . . . "[d]isputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract . . . ."  (*Id.*)

T-Mobile's arbitration agreement with Plaintiff is contained in various contracts executed in connection with the purchase of four Apple iPhones from T-Mobile.  (Green Decl. [#53-1], at ¶¶ 3–4; Service Agreements [#53-2], at 2–4; EIP Agreements [#53-3], at 2–26.)  The EIP Agreements contain a dispute resolution clause by which the parties agreed that any disputes will be resolved by either binding arbitration or in small claims court.  (EIP Agreements [#53-3], at 4.)  This clause provides that "any and all claims or disputes in any way related to or concerning this agreement," as well as T-Mobile's privacy policy, services, equipment, devices or products, including any billing disputes, "will be resolved by binding arbitration or in small claims court." (*Id.*)  The clause also provides the mechanism for opting out of the arbitration procedures.  (*Id.*)

The Service Agreements contain a similar dispute resolution clause requiring arbitration of disputes unless an opt-out is received within 30 days of activation. (Service Agreements [#53-2], at 1.)  Finally, T-Mobile's Terms and Conditions, which are incorporated in the Service Agreements, also contain a mandatory arbitration provision that requires any disputes to be resolved by either binding arbitration or in small claims court. (Terms and Conditions [#53-4], at 5.)

Plaintiff's name, signature, and initials are on these agreements, but Plaintiff contends that the transactions were the result of identity theft and that he was not an actual party to the agreements.  Federal courts distinguish between challenges as to the validity or enforceability of a contract and challenges as to the formation and existence of a contract. *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018). "The Supreme Court has suggested that the category of arguments that question the very existence of an agreement include 'whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent.'"  *Id.* (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006) (citations omitted)).  Because Plaintiff is arguing that he was never a party to the contracts containing the arbitration agreements, this Court must evaluate, prior to compelling arbitration, whether there was in fact an agreement formed that exists between Plaintiff and Santander and Plaintiff and T-Mobile.

Whether or not the parties formed a contract—and thus formed an agreement to arbitrate—is governed by state contract law. *Kubala*, 830 F.3d at 201.  The Retail Installment Contract assigned to Santander regarding the purchase of the vehicle contains a choice-of-law provision indicating that the laws of the State of Florida govern the contract. (Contract [#33-1], at 6.)  The EIP Agreements related to the T-Mobile cell phone purchases state that the laws of

the state in which the consumer's billing address in T-Mobile's records is located governs the contract. (EIP Agreements [#53-3], at 6.) At the time Plaintiff filed this suit, his mailing address was located in San Antonio, Texas. However, Plaintiff updated his mailing address to a Florida address shortly after he filed suit. (Change of Address [#5].)

Regardless of whether Texas or Florida law governs, both Texas and Florida require an offer, acceptance, consideration, mutual assent, and sufficient specification of terms to create an enforceable contract. *Land Co. of Osceola Cnty., LLC v. Genesis Concepts, Inc.*, 169 So.3d 243, 247 (Fla. 4th DCA 2015); *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Forgery is the making without authority of a false instrument in writing, purporting to be the act of another. *Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976). Plaintiff challenges the required elements of acceptance and mutual assent necessary to form the contracts at issue.

Where the parties dispute the existence of a contract and the making of the arbitration agreement is in issue, the FAA requires a brief trial on the merits. *See* 9 U.S.C. § 4. However, in "an effort to limit meritless claims of invalidity, the Fifth Circuit has held that a party seeking to avoid arbitration must bear the initial burden of production to create a validity fact issue." *Prevost v. Burns Int'l Sec. Servs. Corp.*, 126 F. Supp. 2d 439, 442 (S.D. Tex. 2000) (citing *T & R Enters., Inc. v. Cont'l Grain Co.*, 613 F.2d 1272, 1278 (5th Cir. 1980); *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154–55 (5th Cir. 1992)). A party to an arbitration agreement cannot simply declare the agreement invalid, but instead "must produce at least some evidence to substantiate his factual allegations" to entitle the party to an evidentiary hearing on the issue. *See Dillard*, 961 F.2d at 1154 (citing *T & R Enters.*, 613 F.2d at 1278). Such evidence might include, for example, a sworn affidavit and evidence that the signature on the arbitration

agreement is distinct from the signature on another document. *Prevost*, 126 F. Supp. 2d at 441–42.

Here, Plaintiff has not provided the Court with any evidence to support his general allegations of forgery as required in this Circuit and therefore has not satisfied his burden of production. Plaintiff's responses to the motions to compel arbitration merely generally assert that the debt at issue is fraudulent. Plaintiff argues in the response to the Santander motion that Santander reported an inaccurate address located in Milford, Delaware in the process of investigating the alleged identity theft, and he attaches a document containing the Delaware address to his response. But Plaintiff does not explain to the Court how it establishes any evidence of identity theft or the forgery of his signatures. The only other evidence offered by Plaintiff is an undated and unidentified communication appearing to be authored by someone from CarMax stating that "we have no account relationship with" Plaintiff. (Communication [#74], at 6.) This document does not establish anything related to the alleged forgery other than the undisputed fact that CarMax assigned the Contract to Santander.

Moreover, Santander's evidence establishes that Plaintiff executed the contract to purchase the Vehicle. Attached to Santander's motion is an "Affidavit of Truth" authored by Plaintiff and sent to Santander in November 2022. (Affidavit [#31-1], at 15.) In this letter, Plaintiff admitted to being the individual participating in the formation of the Contract. (*Id.* (stating "I Isaiah Kennedy, participated in a consumer transaction not a loan.").) By this letter, Plaintiff attempted to rescind the Contract due to the alleged failure to Santander to inform Plaintiff of the right to recission at the time of the transaction. (*Id.* ("I was never told I had 3 days to rescind the agreement. Neither was I given the notice that comes with all consumer credit transactions.").) Nowhere in this letter does Plaintiff argue he was the victim of identity

theft or that his signature was forged. Additionally, the return address on the certified mail parcel containing the "Affidavit of Truth" is the same Tampa, Florida, address from which the vehicle at issue was repossessed after Plaintiff defaulted on the credit transaction. (Van Haren Decl. [#31-1], at ¶ 11; Affidavit [#31-1], at 17.) The record also contains a copy of Plaintiff's Driver's License, which was presented at the time of purchase in conjunction with Plaintiff's Credit Application. (Credit Application [#31-1], at 10; Driver's License [#31-1], at 13.) Finally, the telephone number included on the Credit Application is the same number from which Santander received 13 inbound calls regarding the status of the account and payments. (Van Haren Decl. [#31-1], at ¶ 9.) This number was also included by Plaintiff in the consumer protection complaint he filed on March 20, 2023, with the Consumer Financial Protection Bureau, complaining of fraud in the making of the Contract and unfair debt collection. (*Id.* at ¶ 12, Compl. [#31-1], at 19–23.)

As to the alleged forgery of the T-Mobile agreements, Plaintiff merely demands that T-Mobile produce evidence of his "wet ink signature." Plaintiff does not attach any evidence to his response. Electronic signatures are valid and enforceable. Under the E–Sign Act, "with respect to any transaction in or affecting interstate or foreign commerce" a "signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form." 15 U.S.C. § 7001(a)(1). Similarly, under Texas's and Florida's enactment of the Uniform Electronic Transactions Act, a "signature may not be denied legal effect or enforceability solely because it is in electronic form" and if a law or provision "requires a signature, an electronic signature satisfies" the law or provision. Tex. Bus. & Com. Code § 322.007(a), (d); Fla. Stat. § 668.50(7)(a), (d).

The record before the Court also contains the sworn declaration of Shelly Green, a Senior Paralegal with T-Mobile, which states that, according to the account notes created by the store representative at the time of the transactions, Plaintiff presented his physical identification to T-Mobile store representatives, who verified his identity as part of the cell phone purchase transactions. (Green Decl. [#53-1], at ¶¶ 5–6.) The declaration also includes a true and correct copy of the records documenting Plaintiff's presentation of his driver's license for visual inspection. (*Id.* at ¶ 6.) Plaintiff has not provided any cogent argument or evidence that calls into question the authenticity of the signatures on the agreements at issue. T-Mobile has put forth evidence that Plaintiff appeared personally and entered into numerous agreements containing arbitration provisions. Plaintiff's signatures on the Service Agreements and EIP Agreements may be attributed to him, despite their being purely electronic.

In summary, the Court finds that Plaintiff's submissions do not entitle him to an evidentiary hearing or a trial on the merits of the alleged forgery given the other evidence before the Court produced by Santander and T-Mobile. Santander and T-Mobile have provided the Court with valid and enforceable agreements to arbitrate between themselves and Plaintiff.

Having concluded that valid agreements to arbitrate exist, the Court also finds that the Arbitration Provision in the Santander contract broadly covers all claims arising out of the Contract and the credit sale, including Plaintiff's claims regarding debt collection and credit reporting related to the Contract. (Contract [#31-1], at 7 (making arbitration mandatory as to any claim related to the consumer credit sale).) Plaintiff does not raise any arguments in his response related to the arbitrability of the specific claims asserted in this federal action. Insofar as Plaintiff has any such objections to arbitration, the question of arbitrability of Plaintiff's claims has been delegated to the arbitrator by the Contract. A delegation clause "evinces an intent to

have the arbitrator decide whether a given claim must be arbitrated." *Kubala*, 830 F.3d at 202. The Arbitration Provision evinces such an intent. (*See* Contract [#31-1], at 7 (delegating "[d]isputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract" to the arbitrator).) Plaintiff may raise any arguments regarding arbitrability before the arbitrator.

The T-Mobile arbitration agreements do not contain a delegation clause. But the Court also finds that the agreements require arbitration of the Fair Credit Reporting Act claims asserted in Plaintiff's pleadings. The agreements state that "any and all claims or disputes in any way related to or concerning this agreement," as well as T-Mobile's privacy policy, services, equipment, devices or products, including any billing disputes, "will be resolved by binding arbitration or in small claims court." (EIP Agreements [#53-3], at 4.) Plaintiff has not raised any arguments contesting arbitrability of his specific federal causes of action, and the Court will compel Plaintiff to proceed before an arbitrator with these claims.

**IT IS THEREFORE ORDERED** that Defendant Santander Consumer USA, Inc.'s Motion to Compel Arbitration [#31] and Defendant T-Mobile Corporation's Motion to Dismiss for Improper Venue and Lack of Subject Matter Jurisdiction [#53] are **GRANTED IN PART** as set forth herein.

**IT IS FURTHER ORDERED** that Plaintiff and Defendants Santander Consumer USA, Inc. and T-Mobile Corporation submit to final and binding arbitration pursuant to the terms of the agreement between these parties as set forth in Defendants' motions.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants Santander Consumer USA, Inc. and T-Mobile Corporation are **STAYED** pending the outcome of the arbitration.

**IT IS FINALLY ORDERED** that the parties file quarterly status reports on the status of the arbitration, with the first report due on **March 13, 2024**.

SIGNED this 13th day of December, 2023.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE