IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ISAIAH J. KENNEDY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| EQUIFAX INFORMATION SERVICES | § | SA-23-CV-00470-FB |
| LLC,  EXPERIAN INFORMATION | § | |
| SOLUTIONS, INC.,  TRANS UNION, | § | |
| LLC,  NAVY FEDERAL CREDIT | § | |
| UNION,  CREDENCE RESOURCE | § | |
| MANAGEMENT,  DEPARTMENT OF | § | |
| EDUCATION,  CREDIT FIRST | § | |
| NATIONAL ASSOCIATION,  T | § | |
| MOBILE,  AT&T,  AMSHER | § | |
| COLLECTION SERVICES, | § | |
| SANTANDER CONSUMER USA, | § | |
| | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the following motions to dismiss:  Defendant

Navy Federal Credit Union's Motion to Dismiss Plaintiff's First Amended Complaint [#33],

Defendant Credit First National Association's Motion to Dismiss Plaintiff's First Amended

Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [#36], Defendant

AT&T's Motion to Dismiss Plaintiff's Verified Complaint [#44], and Defendant AT&T's

Motion to Dismiss Plaintiff's Claims Pursuant to Fed. R. Civ. P. 12(b)(5) and Fed. R. Civ. P.

41(b) [#81].   All pretrial matters in this case have been referred to the undersigned for

disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#10].   The

undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. §

636(b)(1)(B).  For the reasons set forth below, it is recommended that the District Court deny the motion to dismiss field by Navy Federal Credit Union, grant the motion to dismiss filed by Credit First National Association, dismiss the second motion to dismiss filed by AT&T based on insufficient service of process, and dismiss as moot the first motion to dismiss filed by AT&T.

## I.  Background

Plaintiff Isaiah J. Kennedy filed this action, proceeding *pro se*, on April 18, 2023.  Mr. Kennedy's live pleading is his Amended Complaint [#28], filed July 18, 2023, in response to several early motions to dismiss filed by some of the named Defendants.  Thus, Mr. Kennedy has already had one opportunity to amend his pleadings after being put on notice of the possible defects in his pleadings.

The Amended Complaint asserts causes of action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the Texas Debt Collection Act, Tex. Fin. Code § 392, *et seq.* ("TDCA"), against eleven Defendants: Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); Trans Union, LLC ("Trans Union"); Navy Federal Credit Union ("Navy Federal"); Credence Resource Management ("Credence"); Department of Education ("DOE"); Credit First National Association ("CFNA"); T-Mobile; AT&T; Amsher Collection Services ("Amsher"); and Santander Consumer USA ("Santander").

Mr. Kennedy alleges that he was the victim of identity theft and that Defendants, who are various credit reporting agencies (Equifax, Experian, Trans Union), alleged furnishers of information (Navy Federal, Santander, T-Mobile, AT&T, DOE), and debt collectors (Credence, CFNA, and Amsher), provided false information regarding his debts and credit, failed to perform a reasonable investigation regarding the disputed debt, and improperly attempted to collect a debt

Mr. Kennedy does not owe.  Mr. Kennedy alleges he has suffered financial harm due to Defendants' actions and cannot move forward financially until the fraudulent debt is removed.

T-Mobile and Santander moved to compel arbitration of Mr. Kennedy's claims, and the Court granted the motion on December 13, 2023 [#82].  The Court's order directed these parties to submit their claims to a final and binding arbitration and stayed Mr. Kennedy's claims against T-Mobile and Santander pending the outcome of the arbitration.

Navy Federal, CFNA, and AT&T have moved to dismiss Mr. Kennedy's claims.  Mr. Kennedy filed a combined response in opposition to the three motions [#47], to which Defendants each filed a reply [#49, #50, #51].  Mr. Kennedy did not file a response to AT&T's most recent motion, and the time to do so has expired under the Court's Local Rules.  *See* W.D. Tex. Loc. R. CV-7(d) (response to all motions other than discovery and case-management motions are due within 14 days of the motion's filing).

## II. Analysis

The Court should deny Navy Federal's motion to dismiss for lack of personal jurisdiction and for failure to state a claim; should grant CFNA's motion to dismiss for failure to state a claim; and should grant as unopposed AT&T's motion to dismiss due to improper service.

### A.    Navy Federal's Motion to Dismiss under Rule 12(b)(2) and 12(b)(6)

By its motion, Navy Federal argues Mr. Kennedy's Amended Complaint should be dismissed under Rule 12(b)(6) because it fails to allege any facts against Navy Federal giving rise to a legal claim and under Rule 12(b)(2) because Mr. Kennedy's allegations are insufficient regarding the Court's personal jurisdiction.  The Court should deny the motion.

i.     <u>**Motion to Dismiss for Lack of Personal Jurisdiction**</u>

An out-of-state defendant may move to dismiss under Rule 12(b)(2) if the Court does not have authority to exercise personal jurisdiction over an out-of-state defendant due to the defendant's lack of contacts with the state where the Court is located.  Personal jurisdiction refers to the power of a court to make a decision regarding the party being sued in a case.

A two-step analysis governs the inquiry into personal jurisdiction over nonresident defendants.  *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993).  "Absent a controlling federal statute regarding service of process, we first determine whether the long arm statute of the forum state permits exercise of jurisdiction."  *Id.*  We then determine whether such exercise comports with due process.  *Id.*  "Because the Texas Supreme Court has interpreted the Texas long arm provisions as conferring personal jurisdiction over nonresidents whenever consistent with constitutional due process, we need now answer only the latter inquiry."  *Id.*  Due process requires that (1) the defendant have established "minimum contacts" with the forum state; and (2) the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice."  *Id.*

There are two types of personal jurisdiction—general and specific.  General jurisdiction permits a court to assert jurisdiction over a defendant even based on a forum connection unrelated to the conduct at issue in the underlying suit.  *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014).  Where the defendant's contacts are not sufficient to establish general jurisdiction, a court may still exercise specific jurisdiction if (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to defendant's contacts.  *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 369 (5th Cir. 2010).  The touchstone

of either inquiry is whether the "defendant *himself*" has purposefully availed himself of the benefits of the forum; "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 284–85 (emphasis in original).   When a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, it has clear notice that it is subject to suit there . . ." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (internal citation and quotation omitted).

Where a non-resident defendant challenges personal jurisdiction, as here, the plaintiff bears the burden of making a *prima facie* showing of jurisdiction; the plaintiff need not establish jurisdiction by a preponderance of the evidence.  *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).  Once the plaintiff makes a *prima facie* case of personal jurisdiction, the burden shifts to the defendant to demonstrate that exercising jurisdiction over the defendant would be so unfair and unreasonable as to violate due process of law.  *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).

In determining whether personal jurisdiction exists, "the allegations of the complaint are taken as true to the extent they are not contradicted by affidavits."  *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982).  "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."  *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997) (internal citation and quotation omitted).  "Where a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits."  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

In its motion to dismiss, Navy Federal is not asserting that it does not have sufficient contacts with Texas to give rise to personal jurisdiction or making any specific arguments regarding personal jurisdiction.  Instead, Navy Federal's motion merely cites the pleading standard and argues that Mr. Kennedy has not pleaded sufficient facts to establish personal jurisdiction.  Mr. Kennedy is a *pro se* party, and personal jurisdiction is a complex procedural issue.  It is not surprising that Mr. Kennedy's pleadings do not contain specific factual allegations regarding Navy Federal's minimum contacts with the State of Texas for jurisdictional purposes.

Navy Federal's motion can be resolved without an evidentiary hearing.  The only facts that could pertain to personal jurisdiction over Navy Federal in Mr. Kennedy's Amended Complaint are that Mr. Kennedy lives in Texas (Am. Compl. [#28], at ¶ 13); that Defendants engaged in the complained of acts in Texas (*id.*); that Navy Federal has its corporate headquarters in Vienna, Virginia (*id.* at ¶ 23); that Navy Federal improperly accessed Mr. Kennedy's credit reports without authorization (*id.* at ¶ 25); and that Navy Federal failed to fully and properly investigate disputes relating to a fraudulent account from identity theft in violation of the FCRA (*id.* at ¶ 68).  Navy Federal has not provided the Court with any affidavits or other evidence in support of its motion to dismiss for lack of personal jurisdiction.  The Court therefore must accept all of these allegations as true and uncontroverted.

Additionally, Federal Rule of Evidence 201(b) permits this Court to take judicial notice of facts not subject to reasonable dispute because they are either generally known within this Court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  The Court may therefore take judicial notice of the basic information on Navy Federal's website.  *See also Reed v. LKQ Corp.*,

436 F. Supp. 3d 892, 900–01 (N.D. Tex. 2020) (taking judicial notice of information from defendant's company website). Navy Federal's website establishes that it is an American global credit union headquartered in Vienna, Virginia, which is member-owned and not-for-profit. *See* About Navy Federal Credit Union, available at https://www.navyfederal.org/about.html#:~:text=We're%20a%20member%2Downed,of%20them%20has%20a%20vote (last visited Jan. 29, 2024). Navy Federal's website further states that it exclusively serves the military, veterans, and their families and boasts a worldwide reach with 355 branches across the globe. *Id.* Furthermore, Navy Federal's website contains a search engine providing the public with a directory of all branch offices and all of its ATM locations. *See* Branches and ATMs, *available at* https://www.navyfederal.org/branches-atms.html (last visited Jan. 29, 2024). A simple search of the location of branch offices and ATMs indicates that Navy Federal has locations all over the State of Texas with over 30 locations within the city of San Antonio alone. *See id.* These assertions establish that it is undisputed that Navy Federal maintains a continuous and significant business presence in the State of Texas.

Navy Federal's motion to dismiss for lack of personal jurisdiction does not indicate whether it is challenging this Court's specific or general jurisdiction. Nor does Navy Federal provide the Court with any arguments or briefing on personal jurisdiction in the context of FCRA actions. However, the undersigned notes that as a general principle, courts do not find specific personal jurisdiction in such cases based solely on a foreign defendant causing harm to a plaintiff known to reside in the forum state, as this does not, without more, establish purposeful availment of the forum state's privileges. *See Cunningham v. Nationwide Sec. Sols., Inc.*, No. 3:17-CV-337-S-BN, 2018 WL 4575005, at *15–16 (N.D. Tex. Aug. 31, 2018), *report and recommendation adopted*, No. 3:17-CV-337-S-BN, 2018 WL 4568803 (N.D. Tex. Sept. 24,

2018) (collecting cases).  But this is not the scenario here, where Navy Federal has a substantial presence in the State of Texas.  Accordingly, in light of Mr. Kennedy's *pro se* status, the uncontroverted facts in the Amended Complaint, the statements on Navy Federal's website, and the lack of any evidence attached to Navy Federal's motion controverting its contacts with the forum state, the undersigned finds that Navy Federal is not entitled to dismissal for lack of personal jurisdiction.  If Navy Federal believes it lacks the contacts with the State of Texas to confer either general or personal jurisdiction, it may file a renewed motion to dismiss supported by evidence to that effect, and the Court will convene an evidentiary hearing.

ii.     **Motion to Dismiss for Failure to State a Claim**

The Court should also deny Navy Federal's motion to dismiss for failure to state a claim. If a defendant moves to dismiss a complaint under Rule 12(b)(6), the Court must grant the motion if the complaint does not state a claim that is legally plausible, meaning if there exists some defect in the facts alleged in the complaint that make the claims legally flawed or there are not enough facts alleged for the Court to determine that the defendant could be liable.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

8

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted). However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should not be dismissed unless the Court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570.

Because Mr. Kennedy is a *pro se* litigant, his pleadings are to be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, *pro se* litigants, like all other parties, must follow the Federal Rules of Civil Procedure. *See Chhim*, 836 F.3d at 469 ("We hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, but pro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level.").

Navy Federal argues that Mr. Kennedy's Amended Complaint lacks sufficient factual allegations to plead a plausible cause of action under the FCRA. Mr. Kennedy pleads one cause of action against Navy Federal—a claim for the failure to investigate the completeness or accuracy of information provided to a consumer reporting agency after being notified of a dispute in violation of 15 U.S.C. § 1681s-2(b)(1)(A). (Am. Compl. [#28] at ¶¶ 65–71.) Although "the FCRA primarily regulates consumer credit reporting agencies, the statute also creates various obligations on 'furnishers of information' to provide accurate information to consumer credit reporting agencies." *Coleman v. Devos*, No. 3:19-CV-2417-D-BH, 2020 WL 9219408, at *3 (N.D. Tex. Dec. 28, 2020) (citing *Smith v. Nat'l City Mortg.*, No. A-09-CV-881

LY, 2010 WL 3338537, at *15 (W.D. Tex. Aug. 23, 2010)), *report and recommendation adopted sub nom. Coleman v. Cardona*, No. 3:19-CV-2417-D, 2021 WL 1169149 (N.D. Tex. Mar. 29, 2021).

The FCRA imposes two general duties on furnishers: (1) a duty to provide accurate information, 15 U.S.C. § 1681s-2(a); and (2) upon notice of dispute, a duty to investigate disputes, correct inaccurate information, and inform the credit reporting agency of an investigation's results, 15 U.S.C. § 1681s-2(b). *Eustice v. JPMorgan Chase & Co.*, Civil Action No. H-19-1489, 2019 WL 3067507, at *2 (S.D. Tex. July 12, 2019). To plead that a furnisher of information violated the FCRA as to its investigatory duties, Mr. Kennedy must plead four elements: (1) the furnisher provided inaccurate credit information about him to a consumer reporting agency; (2) he notified a credit reporting agency that this information in his credit report was inaccurate; (3) the credit reporting agency notified the furnisher of the dispute; and (4) after receiving this notice, the furnisher failed to conduct a reasonable investigation and provide notice to the credit reporting agency to correct the reporting errors. *Onosode v. Equifax Info. Servs.*, No. 420CV00951SDJCAN, 2023 WL 2783263, at *12 (E.D. Tex. Mar. 29, 2023), *report and recommendation adopted sub nom. Onosode v. Equifax Info. Servs.*, LLC, No. 4:20-CV-951, 2023 WL 3060790 (E.D. Tex. Apr. 22, 2023).

Here, Mr. Kennedy has alleged each of the four elements of a violation of Section 1681s-2(b). Mr. Kennedy's Amended Complaint asserts that Navy Federal is a "furnisher of information" who incorrectly reported a debt to various credit reporting agencies that he does not owe, ostensibly because Mr. Kennedy was the victim of identity theft. (Am. Compl. [#28], at ¶¶ 23, 34–36.) Mr. Kennedy identifies the specific amount of the disputed debt owed to Navy Federal listed on each of the three credit reports at issue. (*Id.* at ¶¶ 34–36.) Mr. Kennedy further

alleges that he wrote a detailed dispute letter notifying the three credit reporting agencies that the information on his credit report was inadequate and that "[u]pon information and belief" the reporting agencies forwarded the dispute letter to the entities furnishing information about the "fraudulent accounts." (*Id.* at ¶¶ 39–46.)  Finally, Mr. Kennedy alleges that Navy Federal and other furnishers of information sued in this action failed to investigate the dispute and to remove the disputed debt from his credit report, which caused him financial harm. (*Id.* at ¶¶ 48–50, 65–71.)

Navy Federal's motion to dismiss does not argue that factual allegations regarding a specific element of his claim are lacking.  Rather, Navy Federal generally argues that Mr. Kennedy's allegations focus primarily on the acts of the credit reporting agencies not Navy Federal as a furnisher of information.  This assertion is not a basis for dismissal.  Mr. Kennedy has pleaded facts related to Navy Federal even if the majority of his factual allegations concern the credit reporting agencies.

The only other argument in support of dismissal is that Mr. Kennedy fails to include specific factual information about Navy Federal itself receiving any dispute letter from any credit reporting agency and his pleadings are insufficient because he did not attach the dispute letter or his credit report to his pleadings.  At the pleading stage, Mr. Kennedy is not required to provide evidence to support his factual allegations.  Mr. Kennedy's Amended Complaint includes the date he believes, according to certified mail receipts, that the credit reporting agencies received his dispute letter—January 17, 2023. (*Id.* at ¶¶ 39, 42, 45.)  It also includes the approximate date he believes the furnishers of information like Navy Federal would have received the letter had the credit reporting agencies complied with their own obligations under the FCRA. (*Id.* at ¶¶ 40, 43, 46.)  The undersigned reminds Navy Federal that Mr. Kennedy is a *pro se* party and the

Court is required to construe his pleadings more liberally than it would a party with counsel.  Mr. Kennedy's Amended Complaint pleads a plausible claim under the FCRA against Navy Federal.

**B.     CFNA's Motion to Dismiss**

CFNA asks the Court to dismiss all claims asserted against it in this lawsuit for failure to state a claim pursuant to Rule 12(b)(6).  Mr. Kennedy alleges that the three debt-collector Defendants (including CFNA) violated the FDCPA, the TDCA, and the FCRA.  (*Id.* at ¶¶ 100–10.)  Mr. Kennedy's factual allegations as to the debt-collector defendants—and as to CFNA, specifically—are sparse.  He alleges that CFNA's principal purpose is debt collection and that a debt in the amount of $1,251.00 owed to CFNA appeared on his credit report furnished by Trans Union (but not the other two credit reports).  (*Id.* at ¶¶ 30, 36.)  Mr. Kennedy further alleges that collectively the debt collector defendants are reporting false collections on his credit reports in an attempt to collect a debt he does not owe.  (*Id.* at ¶ 50.)  Because Mr. Kennedy has not stated a claim against CFNA under the FDCPA, the TDCA, or the FCRA, CFNA's motion to dismiss should be granted.

**i.     FDCPA Claim**

As to the FDCPA, Mr. Kennedy alleges that CFNA violated Sections 1692e and 1692f of the FDCPA "by attempting to collect a debt from him that he does not owe by sending him a collection notice for a debt that falsely represented the character, amount, and legal status of the alleged debt."  (*Id.* at ¶ 101.)  The FDCPA protects consumers from unfair debt collection practices by prohibiting "debt collectors" from using false or misleading representations or using abusive tactics in an attempt to collect a debt.  *Garrett v. Derbes*, 110 F.3d 317, 317–18 (5th Cir. 1997).  To plead a cause of action under the FDCPA, Mr. Kennedy must allege facts as to the following elements of his claim: (1) he has been the object of collection activity arising from a

consumer debt; (2) the defendant is a debt collector defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.  *Birdow v. Allen*, No. A-13-CV-709-LY, 2013 WL 4511639, at \*2 (W.D. Tex. Aug. 23, 2013).

CFNA argues that Mr. Kennedy's FDCPA claim fails because it is not a "debt collector" as defined by the statute.  The FDCPA defines "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, <u>debts owed or due or asserted to be owed or due another</u> . . . .

15 U.S.C. § 1692a(6) (emphasis added).  Based on the language in the statute, debt collectors under the FDCPA are therefore entities collecting debts on behalf of third parties, not debts directly owed to them by a consumer.  *Raburn v. Cmty. Mgmt., LLC*, 761 Fed. App'x 263, 265–66 (5th Cir. 2019).  A creditor, on the other hand, is a person or entity to whom the debt is owed, "and when a creditor collects its debt for its own account, it is not generally acting as a debt collector."  *Dixon v. Mazda Fin. Servs., Inc.*, No. 4:21-cv-03716, 2022 WL 2479908, at \*2 (S.D. Tex. July 6, 2022) (quoting *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 135-36 (4th Cir. 2016), *aff'd*, 137 S. Ct. 1718 (2017)).  "Thus, the material distinction between a debt collector and a creditor under the FDCPA is whether the collection activity is for itself (a creditor) or for others (a debt collector)."  *James v. Ally Bank*, No. 421CV00925SDJCAN, 2023 WL 1093891, at \*3 (E.D. Tex. Jan. 3, 2023), *report and recommendation adopted*, No. 4:21-CV-925-SDJ, 2023 WL 1081270 (E.D. Tex. Jan. 27, 2023).  "Courts have repeatedly found that banks and financial institutions attempting to collect their own debts are not debt collectors under the FDCPA."  *Id.* (collecting cases).  *See also Goia v. CitiFinancial Auto*, 499 Fed. App'x 930, 938 (11th Cir. 2012) (Where a financial company is "engaged in the collection of its own debts, as opposed to the debts of another," it does "not qualify as a debt collector under the FDCPA.").

Here, Mr. Kennedy alleges that his Trans Union credit report identifies an account with CFNA in the amount of $1,251, and that CFNA attempted to collect a debt he did not owe due to his being a victim of identity theft.  (Am. Compl. [#28], at ¶ 30.)  There are no allegations in Mr. Kennedy's pleading regarding CFNA's attempt to collect a debt on behalf of a third party.  Even construing Mr. Kennedy's pleadings liberally, the only reasonable inference based on the facts alleged are that CFNA is a creditor not a debt collector under the FDCPA.  Mr. Kennedy has not alleged facts that plausibly place CFNA within the ambit of the FDCPA.  CFNA is entitled to dismissal of Mr. Kennedy's FDCPA claim.

**ii.**    **TDCA Claim**

Mr. Kennedy alleges that the debt-collector Defendants (including CFNA) violated several provisions of the TDCA by using false representations and deceptive means in attempting to collect the fraudulent debt.  (*Id.* at ¶¶ 103–08.)  The TDCA prohibits debt collectors from using threats, coercion, or other wrongful practices to collect consumer debts. *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986).  The elements of a TDCA claim are: (1) the debt is a consumer debt; (2) the defendant is a debt collector within the meaning of the TDCA; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the defendant committed the wrongful act against the plaintiff; and (5) the plaintiff was injured by the defendant's wrongful act.  *Williams v. Freedom Mortg. Corp.*, No. 3:22-CV-01973-N, 2023 WL 1806023, at *2 (N.D. Tex. Feb. 7, 2023) (citing Tex. Fin. Code §§ 392.001–392.404).  The subsections cited by Mr. Kennedy in his Amended Complaint are § 392.304(a)(8), which prohibits "misrepresenting the character, extent, or amount of a consumer debt" and § 302.304(a)(19), which prohibits "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."

"To violate the TDCA using a misrepresentation, the debt collector must have made an *affirmative statement* that was false or misleading."  *Verdin v. Fed. Nat. Mortg. Ass'n*, 540 Fed. App'x 253, 257 (5th Cir. 2013) (emphasis in original) (internal citation and quotation omitted). CFNA argues that Mr. Kennedy's Amended Complaint fails to identify any alleged affirmative statements on the part of CFNA that could support a claim under the TDCA.  The undersigned agrees.  The totality of the allegations against CFNA—that CFNA's name appeared on his credit report furnished by Trans Union when he did not in fact owe them the debt—do not allege any affirmative statement of any kind by CFNA.  CFNA is also entitled to dismissal of this claim.

### iii.    **FCRA Claim**

Finally, Mr. Kennedy alleges that the debt-collector Defendants, including CFNA, violated the Section 1681b(f) of the FCRA by using or obtaining a consumer credit report for an improper purpose.  (Am. Compl. [#24], at ¶¶ 109–10.)  Section 1681b(f) of the FCRA only permits a person to use or obtain a consumer report for certain statutory purposes.  CFNA argues it is entitled to dismissal of this claim because Mr. Kennedy fails to allege any facts regarding when or how CFNA obtained his credit report and how this act caused him damage.  The undersigned agrees and finds this claim should also be dismissed.

Notably, Mr. Kennedy's response to CFNA's motion to dismiss does not address his claim under Section 1681b(f) and instead refers to CFNA throughout the response as one of the "furnishers of information" liable under the FCRA like Navy Federal for failing to investigate a dispute of a debt under Section 1681s-2(a).  However, Mr. Kennedy did not plead this claim in his Amended Complaint.  And given that Mr. Kennedy has already been given the opportunity to replead, he will not be permitted to file another amended pleading at this time to add new claims against CFNA or other Defendants.

**C.     AT&T's Motions to Dismiss under Rule 12(b)(5)**

In his Amended Complaint, Mr. Kennedy accuses AT&T of violating the FCRA as a "furnisher of information," like Navy Federal, and asserts a cause of action under Section 1681s-2(b)(1)(A) based on the same failure to investigate his dispute of the debt appearing on his credit report as to AT&T.  (Am. Compl. [#24], at ¶¶ 26, 93–99.)  AT&T has filed two motions to dismiss.  The first motion seeks dismissal of Mr. Kennedy's claims against AT&T for failure to state a claim under Rule 12(b)(6) but notes that Mr. Kennedy did not serve AT&T through its registered agent and instead delivered the Complaint and Summons to an individual who did not have authorization to accept service.  Moreover, AT&T informs the Court that if Mr. Kennedy had an actionable claim against AT&T, the proper Defendant would not have been AT&T, Inc., but rather AT&T Mobility LLC, a wholly owned subsidiary with a separate principal place of business and registered agent.

Immediately prior to AT&T filing its first motion to dismiss, Mr. Kennedy filed a motion for Clerk's entry of default.  The Clerk granted the motion and entered default.  Mr. Kennedy subsequently filed a motion for default judgment.  AT&T moved to set aside the default on the basis that AT&T was never properly served and therefore was not in default.  The Court set aside the entry of default, finding that Mr. Kennedy had not presented the Court with a certified mail receipt containing the signature of an officer or other person authorized to accept service, only an affidavit attesting to service.  (Order [#60].)  In the Order, the Court also denied the motion for default judgment filed by AT&T and *sua sponte* extended the time for service to September 25, 2023.  When Mr. Kennedy did not submit any revised proof of service by that date or any other document with the Court explaining his attempt to re-serve AT&T, AT&T filed its second motion to dismiss currently before the Court.

This motion argues for dismissal pursuant to Rule 12(b)(5) for improper service and for failure to comply with a Court order pursuant to Rule 41(b).  Mr. Kennedy did not file a response in opposition to this motion within the time required to do so.  Under this Court's Local Rules, where no response is filed to a motion, this Court may grant the motion as unopposed.  *See* W.D. Tex. CV-7(d).

The District Court should grant AT&T's second motion to dismiss, which alleges improper service under Rule 12(b)(5), and dismiss AT&T's first motion to dismiss as moot, because it is superseded by the second motion.  A defendant may move to dismiss a complaint under Rule 12(b)(5) if the plaintiff did not properly serve the defendant with process.  For service to be effective, a plaintiff, including a *pro se* plaintiff, is expected to comply with the mandates of Federal Rule of Civil Procedure 4.  *See Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) (finding that *pro se* litigants are not exempt from compliance with the rules of service). When service of process is challenged in a Rule 12(b)(5) motion, the plaintiff bears the burden of proving valid and timely service or good cause for failure to effect timely service.  *Sys. Signs Supplies v. U.S. Dep't of Just., Wash., D.C.*, 903 F.2d 1011, 1013 (5th Cir. 1990).

AT&T has argued that Mr. Kennedy's prior service was not effective.  The record reflects that the Court provided Mr. Kennedy with additional time to re-serve AT&T or obtain a waiver of service in light of the issues with service identified by AT&T in its motion to set aside default. Mr. Kennedy did not file anything with the Court within the new time frame for service demonstrating that he had attempted to re-serve AT&T or taken any other action to pursue his claims against AT&T.  Nor did he ask the Court for clarification if he did not understand the Court's order on service or file any response to AT&T's motion to dismiss for insufficient service of process.  The Court's extended deadline to serve AT&T has long expired.  Because

Mr. Kennedy was already provided extra time for service, has not demonstrated any effort to comply with the Court's order, and did not respond to AT&T's motion, the Court should grant the motion to dismiss under both Rule 12(b)(5) and Rule 41(b) for failure to comply with a Court order.

At the Court's hearing on January 16, 2024, Mr. Kennedy continued to express confusion regarding the problem with service on AT&T. Yet Mr. Kennedy was on notice since September 11, 2023, that AT&T was challenging service of process, and he did not act diligently in pursuing his claims against this Defendant. At this late juncture, the undersigned declines to provide Mr. Kennedy with yet another opportunity to properly serve AT&T, particularly in light of his failure to respond to AT&T's second motion to dismiss.

## IV.  Conclusion and Recommendation

Having considered Defendants' motions, the responses and replies thereto, the pleadings, and the governing law, the undersigned **recommends** the following:

- Defendant Navy Federal Credit Union's Motion to Dismiss Plaintiff's First Amended Complaint [#33] be **DENIED**;

- Defendant Credit First National Association's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [#36] be **GRANTED** and that Defendant Credit First National Association be dismissed from the lawsuit;

- Defendant AT&T's Motion to Dismiss Plaintiff's Verified Complaint [#44] be **DISMISSED AS MOOT**; and

- Defendant AT&T's Motion to Dismiss Plaintiff's Claims Pursuant to Fed. R. Civ. P. 12(b)(5) and Fed. R. Civ. P. 41(b) [#81] be **GRANTED** and that AT&T be dismissed from the lawsuit.

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as

a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 29th day of January, 2024.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE